IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

GEOFFREY DANIEL HESSER,

Petitioner,

v.

ROBERT MILLER,

Respondent.

OPINION and ORDER

20-cv-461-jdp

---

Geoffrey Daniel Hesser, proceeding without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. He challenges judgments of conviction for second-degree sexual assault by use or threat of force or violence, disorderly conduct, and bail jumping. Hesser brings one claim that he exhausted on appeal, about the trial court excluding Facebook messages between Hesser and the victim that indicated her desire to role-play being sexually assaulted, and numerous ineffective-assistance-of-counsel claims that he did not exhaust on direct appeal but then later attempted to exhaust after I stayed this case.

Following another round of litigation through the state court system, the parties have fully briefed Hesser's amended habeas petition.[1] I conclude that Hesser fails to show that the Wisconsin Court of Appeals unreasonably applied clearly established federal law regarding the excluded Facebook messages. I also conclude that Hesser's ineffective-assistance-of-counsel claims are procedurally barred and that he does not qualify for an exception to that bar. Accordingly, I will deny his petition.

---

[1] Hesser filed his reply brief past his deadline, Dkt. 24, with a motion for extension of time, Dkt. 25. I will grant his motion for extension of time and consider his reply.

## BACKGROUND

I draw the following from the parties' submissions and the state court records attached to them.

In October 2015, Hesser's girlfriend Annie (the pseudonym used by the court of appeals) reported to police that Hesser had nonconsensual penis-to-anus contact with her inside her car in a parking lot in Wausau, and that has Hesser attempted to make her give him oral sex in the car. Hesser was charged with second-degree sexual assault for the first incident, attempted second-degree sexual assault for the second incident, disorderly conduct, and bail jumping. Hesser pleaded no contest to the bail jumping charge.

Before trial, the state filed a motion in limine seeking to admit portions of Facebook Messenger conversations between Hesser and Annie in the weeks leading up to the incident as other acts evidence to show Hesser's pattern of controlling behavior toward Annie. At a pretrial hearing, the circuit court initially concluded that the Facebook messages were admissible not as other acts evidence, but as evidence of Hesser "grooming" Annie or "setting the victim up for this incident." Dkt. 18-2, at 47.[2] Defense counsel followed with a motion seeking a ruling on the admissibility of additional parts of those Facebook Messenger conversations. The trial court reserved a ruling on "any of the motions that are related to the Facebook messages" until they were raised at trial and the court could see the context in which they were offered. *Id*.

At trial, Annie testified about the events the evening of the incident, in which Hesser, Annie, and their four-month-old daughter spent several hours together in Annie's car. Annie

---

[2] The parties do not submit the transcript of this hearing, but the parties quoted the transcript in appellate briefing and the parties do not dispute these statements. For documents submitted by the parties I will refer to the page numbering in the court's electronic filing system rather than the internal pagination of those documents.

stated that after a couple of stops, Hesser said that he wanted to have sex, and implied that he'd find someone else if she said no. Annie said that she didn't want to have sex with him because Hesser had cheated on her and he hadn't gotten tested for a sexually transmitted disease. Eventually they stopped to buy condoms. Annie suggested that they wait until Hesser got tested for an STD. Hesser yelled at Annie and threatened her that "if [she] attempted to run away, that him and our daughter would be leaving but [she] wouldn't be." Dkt. 18-8, at 127 (transcript of the first day of trial).

After they parked, Hesser took out his penis and told Annie that he wanted her to perform oral sex on him. Annie told him that "if he forced me to do that, that [she] would bite it off." *Id.* at 128. Annie also recounted a conversation from a few days prior in which Hesser told her that "the only thing that keeps him from ending [her] life is his heart." *Id.* Annie stated that Hesser said something similar on the day of the incident.

By this point, Annie and Hesser's infant was crying in the back seat. They drove to a store to get formula. Hesser stated that he was going to check himself into a mental hospital, but then said that he wasn't done with Annie. They parked at another location and Hesser told Annie that "he was really thinking about just ending [her] life." *Id.* at 133. Hesser reiterated his desire to have sex. Their child continued to cry in the back seat. Hesser said that Annie "better take care of her or he will and [Annie] won't like it." *Id.* at 134. Annie crawled between the two front seats to attend to their child. Hesser began to pull off Annie's pants and then told her to unbutton them, which she did because she felt threatened by him. Hesser pushed Annie down and penetrated her anus with his penis. After Annie screamed "ow," Hesser stopped and said that he was sorry. They drove to get food and then went to their respective homes. Overnight Annie went to the hospital to get a sexual assault examination.

The prosecution played recordings of phone calls between Annie and Hesser in the weeks after the incident, in which Hesser suggested that Annie recant her accusation of sexual assault.

During cross-examination, defense counsel asked Annie whether she had communicated with Hesser using Facebook Messenger and whether there were some messages in which she stated that she wanted to have anal sex with Hesser. The court held a sidebar discussion and sustained the state's objection to this evidence.

The details of that ruling aren't part of the transcript. Nor are those Facebook messages part of the record in this court. But the relevant messages (from a week before the incident) are quoted in the parties' court of appeals briefing and I don't take them to be disputing the contents of those messages. Late at night a week before the incident, Hesser prompted Annie over Facebook Messenger to send him sexually explicit texts or photos while he masturbated. Annie expressed her desire for anal sex, to "role play" like they had previously done in the car, and to "be screaming no and you just ignore me and take what you want any way that you want it." Dkt. 18-2, at 26–27. But Annie sent those messages in the context of a conversation in which Hesser repeatedly pushed Annie to send him sexually explicit texts or photos and her asking him to change the subject or end the conversation multiple times. *Id.* at 60–62.

After the trial day, the court recounted the sidebar, stating, "The Court observed that prior consensual relationships with the parties would not necessarily negate the non-consent testified to by the victim today," and that "[the court] also indicated that it would be of minimal relevance, and [the court] thought the unfair prejudice would outweigh that minimal relevance in that it would only serve to confuse the jury regarding the issue at hand at this trial." *Id.* at 211–12.

The state also presented testimony from police officers who investigated Annie's allegations, nurses who conducted Annie's sexual assault examination and collected a DNA sample from Hesser, and a crime lab analyst who testified that Hesser's DNA was found on swabs taken from Annie's anal area.

Hesser chose to testify. He stated that during their time in the car, he and Annie "started to fool around a little bit" but he agreed that Annie refused to give him oral sex, saying that she'd bite him. Dkt. 18-9, at 99 (transcript of the second day of trial). Annie ultimately agreed to give him oral sex so that he wouldn't cheat on her. When they parked, Hesser suggested that they have anal sex instead. Annie agreed, removed her pants, and positioned herself between the seats for consensual sex. After Hesser penetrated her, she said "ow" and he stopped. He denied threatening Annie.

The jury found Hesser guilty of second-degree sexual assault regarding the penis-to-anus contact and of disorderly conduct. The jury found Hesser not guilty of the attempted second-degree sexual assault regarding Hesser's request for oral sex. The trial court sentenced Hesser to 20 years of initial confinement and 15 years of extended supervision on the second-degree sexual assault charge, with lesser concurrent sentences on the other charges.

Hesser was represented by Assistant State Public Defender Megan Sanders-Drazen on his direct appeal. Sanders-Drazen raised three arguments on appeal: that the court erred by (1) allowing the state to amend the information on the morning of trial; (2) excluding Facebook Messenger messages between Hesser and Annie from a week before the charged assault suggesting that Annie was interested in role-playing being raped; (3) and denying Hesser's motion to have the jury view Annie's car. (Hesser raised only the Facebook-message issue in his original habeas petition in this court.) Sanders-Drazen did not raise any claims of ineffective

assistance of trial counsel. The court of appeals affirmed the conviction, and the Wisconsin Supreme Court denied his petition for review. *State v. Hesser*, 2018 WI App 71, 2018 WL 5734676, *review denied*, 2019 WI 21. Hesser then filed this habeas petition, which I stayed so that Hesser could seek postconviction relief on his unexhausted ineffective-assistance claims.

Hesser, by new court-appointed counsel, filed a postconviction motion in state court arguing that trial counsel was ineffective in the following ways:

- Failing to object to the prosecutor's comments regarding the child's presence in the car during the sexual assault.
- Failing to object during the prosecutor's opening statement and closing argument when the prosecutor erroneously stated that Annie said "no" during the assault.
- Failing to object to the prosecutor's references to Annie's young age at the beginning of her relationship with Hesser and at the time of the assault.
- Failing to object when the prosecutor improperly vouched for Annie's credibility and stated that Hesser's testimony was not credible.
- Failing to object when the prosecutor misstated facts at closing arguments.
- Failing to introduce Annie's prior inconsistent statements.
- Failing to request a jury instruction on the lesser-included offense of third-degree sexual assault.
- Failing to request a curative instruction after the prosecutor mentioned a "jail phone call" while cross-examining Hesser.
- Agreeing with the circuit court that portions of the trial testimony would not be read back to the jury during its deliberations.
- Failing to investigate an incident in which Annie called the police and reported that Hesser had stolen her vehicle.
- Failing to object to inaccurate information at sentencing.

Hesser also argued that Sanders-Drazen was ineffective by failing to pursue the ineffective-assistance-of-trial-counsel claims on direct appeal, in part because of a conflict of interest: both

Sanders-Drazen and trial counsel were employed by the State Public Defenders, which prevented Sanders-Drazen from pursuing ineffective-assistance claims against a colleague.

The circuit court held a hearing under *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), at which both Hesser and Sanders-Drazen testified. The court did not have trial counsel testify because the court considered the threshold issue to be whether Sanders-Drazen provided ineffective assistance as postconviction/appellate counsel. Sanders-Drazen testified that she identified only one ineffective-assistance claim (failing to object to statements about the child being present in the car). She told Hesser that she wouldn't be able to represent him if the appeal required pursuing ineffective-assistance claims against a fellow public defender, but that she considered the ineffective-assistance claim to be weaker than the other potential claims for appeal, so she suggested that Hesser keep her as counsel and pursue the other issues. Sanders-Drazen and Hesser both testified that Hesser knowingly made the decision to keep Sanders-Drazen as appellate counsel. The circuit court denied Hesser's postconviction motion, stating that the ineffective-assistance-of-trial-counsel claims were procedurally barred for Hesser's failure to raise them on direct appeal unless Hesser could show that those claims were clearly stronger than the claims that Sanders-Drazen actually pursued, and that the ineffective-assistance claims, alone or together, weren't clearly stronger than the claims that Sanders-Drazen actually pursued.

The Wisconsin Court of Appeals affirmed this decision, stating that Hesser failed to develop an argument for why the ineffective-assistance-of-trial-counsel claims were clearly stronger than the issues that Sanders-Drazen actually pursued on appeal, and that Hesser had waived Sanders-Drazen's conflict of interest. *State v. Hesser*, 2023 WI App 62, 2023 WL

6992353, ¶¶ 21–26. The Wisconsin Supreme Court denied his petition for review. 2024 WI 33.

ANALYSIS

Hesser brings the following claims in his amended petition: (1) the state trial court violated his constitutional right to present a defense by excluding Facebook Messenger messages from a week before the incident suggesting that Annie was interested in role-playing being raped; (2) his trial counsel was ineffective in numerous ways; and (3) his postconviction/appellate counsel was ineffective by failing to raise his ineffective-assistance-of-trial-counsel claims.

**A. Exclusion of Facebook messages**

Before addressing the merits of Hesser's right-to-present-a-defense claim, I will address the state's preliminary argument that I should reject this ground because Hesser didn't fairly present a federal right-to-present-a-defense claim in the state courts, instead arguing only that the Facebook messages shouldn't have been excluded under state law.

I disagree with the state and I will consider the merits of this claim. The briefing in the Wisconsin Court of Appeals on direct appeal shows that although Hesser argued for the admissibility of the messages under Wisconsin evidence rules, he also explicitly argued that the various alleged errors by the trial court—including the exclusion of the Facebook messages—violated his constitutional right to a defense. Dkt. 18-2, at 35–37. And the court of appeals rejected this right-to-present-a-defense claim in affirming Hesser's conviction. *Hesser*, 2018 WL 5734676, ¶ 24. So I conclude that the Wisconsin Court of Appeals considered Hesser's right to present a defense even if it didn't directly cite Supreme Court case law in denying Hesser's

claim about the Facebook messages. That means that I must review the court of appeals' decision denying this claim under 28 U.S.C. § 2254(d)'s familiar deferential standard. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Early v. Packer*, 537 U.S. 3, 8 (2002) (Section 2254(d) "does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." (emphasis in original)).

I may grant Hesser habeas relief on this claim only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." Section 2254(d)(1)–(2). A state court's adjudication is "contrary to" clearly established Supreme Court precedent if the court either: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under § 2254(d)(1)'s "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. For the application to be unreasonable, a state prisoner "must show that the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam). Similarly, for a state court's factual finding to be unreasonable, there must be no

possibility of reasonable agreement with the finding. *See Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015); *Wood v. Allen*, 558 U.S. 290, 301–02 (2010).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation omitted). Although the exclusion of evidence can violate a defendant's right to present a defense, the defendant's right is not absolute. *Taylor v. Illinois*, 484 U.S. 400, 410–11 (1988). "[T]he exclusion of even relevant evidence does not automatically create a due process violation," because "states retain the right, also not absolute, to establish procedures for running their criminal trials." *Morgan v. Krenke*, 232 F.3d 562, 569 (7th Cir. 2000). A state's evidentiary rules do not violate an accused's right to present a defense unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324–25 (internal quotations omitted). Even when there is an error of state law, it is not this court's role to correct it unless the error rises to the level of a constitutional violation. *Morgan*, 232 F.3d at 567.

The Wisconsin Court of Appeals ruled that the trial court appropriately excluded the Facebook messages between Hesser and Annie given the context of that conversation and its low probative value toward the events that occurred a week later:

> As Hesser notes, the messages Annie sent to Hesser all involved discussion of "rough but consensual anal sex." However, Hesser ignores the broader context in which the messages were sent. Annie sent the messages at issue to Hesser after he requested that she send him explicit photographs and engage in sex talk with him while he masturbated. And the messages at issue were all sent after Hesser told Annie that "my anger appears so just always be ready to do what I say OK?" Hesser also told Annie during the

> conversation to "let your freak out," to "get nasty," and to "keep up with the compliance."
>
> In this context, the full messages can be reasonably read to show that Annie was a somewhat unwilling participant in sex talk involving "rough but consensual anal sex" a week before the alleged assault at issue. The circuit court found this sex talk had, at best, a low probative value as to whether Annie consented to anal sex one week later, while attending to her crying infant in the back seat of her car. It was rational for the circuit court to conclude that this low probative value was substantially outweighed by the danger that the jury might conclude that, simply because Annie engaged in the sex talk, she consented to the sex act a week later.

*Hesser*, 2018 WL 5734676, ¶¶ 18–19.

Fairminded jurists could agree with the court of appeals' handling of this issue. In short, there was nothing arbitrary or disproportionate in the trial court's determination that the marginal relevance of the Facebook messages was outweighed by the dangers of undue prejudice or confusion. As the court of appeals stated, in context those messages had minimal probative value because they suggested only that Annie grudgingly agreed to indulge Hesser in discussing role-playing nonconsensual anal sex after Hesser pressured her to do so. And the events in the car made the Facebook conversation even less relevant to whether Annie consented to anal sex a week after: no matter what Annie said in the Facebook conversation, it's difficult to see that conversation's relevance to a situation in which Annie was tending to their crying infant in the back seat, following Hesser repeatedly pressuring and threatening Annie and threatening their child as well. The trial court was reasonably concerned that the messages might lead the jury to confuse Annie's participation in the Facebook conversation as freestanding consent to role-play rape in the future. The court of appeals didn't unreasonably apply Supreme Court principles in rejecting Hesser's challenge to the trial court's weighing of these factors. *Accord Nevada v. Jackson*, 569 U.S. 505, 511 (2013) ("The admission of extrinsic evidence of specific

instances of a witness' conduct to impeach the witness' credibility may confuse the jury, unfairly embarrass the victim, surprise the prosecution, and unduly prolong the trial. No decision of this Court clearly establishes that the exclusion of such evidence for such reasons in a particular case violates the Constitution."); *Holmes*, 547 U.S. at 330 (right to present a defense is not violated by evidentiary rules that "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues"). So Hesser is not entitled to habeas relief on this ground.

**B. Ineffective assistance of trial counsel**

Hesser brought several ineffective-assistance-of-trial-counsel claims in his original petition and later amended his petition to include more ineffective-assistance claims against trial counsel after litigating a postconviction motion in the state court system. In my previous order I stated that Hesser procedurally defaulted these claims because the court of appeals ruled that he had failed to show that his ineffective-assistance-of-trial-counsel claims were "clearly stronger" than the other claims that Sanders-Drazen raised on appeal. *Hesser*, 2023 WI App 62, ¶¶ 17–21 (citing *State v. Romero-Georgana*, 2014 WI 83, 360 Wis. 2d 522, 849 N.W.2d 668, and *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994)).

That was an "independent and adequate" state procedural bar on Hesser's claims that this court would ordinarily not review. *See, e.g.*, *Johnson v. Foster*, 786 F.3d 501, 508 (7th Cir. 2015) ("[A] federal habeas court is not the proper body to adjudicate whether a state court correctly interpreted its own procedural rules, even if they are the basis for a procedural default."). Nonetheless, Hesser contends that the court of appeals' procedural default ruling on these claims wasn't reasonable because the trial court didn't have Hesser's trial counsel testify at the *Machner* hearing. Under extreme circumstances, this court could review whether

state courts properly applied its own rules in defaulting a party seeking postconviction relief. *See, e.g.*, *Johnson*, 786 F.3d at 508 n.7 (discussing "subterfuge" by state court or instances in which the record clearly contradicted state court's invocation of rule). Hesser does not show that such a circumstance exists here. The court of appeals concluded that Hesser didn't develop his argument that his ineffective-assistance-of-trial-counsel claims were "clearly stronger" than the claims raised on appeal. Hesser doesn't argue that he did develop those claims. And his argument that trial counsel should have testified at the *Machner* hearing doesn't support such an argument. So I will not reconsider the court of appeals' procedural default ruling.

I previously stated that Hesser could overcome his procedural default by showing that he is actually innocent. Dkt. 15, at 6–7. To establish an actual innocence claim, Hesser "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To qualify for this narrow exception, Hesser must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. Hesser doesn't need to show that the evidence was "newly discovered," only that it "was not previously considered" by the trier of fact. *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015) ("All *Schlup* requires is that the new evidence is reliable and that it was not presented at trial." (citation omitted)).

In his habeas briefing, Hesser argues that his innocence is shown the Facebook messages between him and Annie about a week before the incident at issue. But as I've already discussed concerning Hesser's substantive claim about the Facebook messages, those messages had only minimal probative value regarding whether Annie consented on the day in question. The messages simply aren't the type of striking new evidence contemplated in *Schlup* that would

preclude any reasonable jury from convicting him. So Hesser has not made a showing of actual innocence necessary to overcome his procedural default. He is not entitled to habeas relief on these claims.

**C. Ineffective assistance of postconviction/appellate counsel**

Hesser also contends that postconviction/appellate counsel Sanders-Drazen was ineffective by failing to raise his ineffective-assistance-of-trial-counsel claims because of a conflict of interest—Sanders-Drazen couldn't stay on the case and raise those claims against a fellow member of the State Public Defenders' office.

The Wisconsin Court of Appeals' decision wasn't entirely clear on this point but I infer that it concluded that this claim was procedurally defaulted because Hesser failed to explain how it was clearly stronger than the claims that Sanders-Drazen raised on direct appeal. Hesser fails to show an actual-innocence exception to his procedural default for the same reasons that I discussed concerning his ineffective-assistance-of-trial-counsel claims.

But the court of appeals went on to discuss the merits of Hesser's conflict-of-interest argument, so I will also address that aspect of its decision. The court of appeals concluded that Hesser's claim failed because he waived the conflict of interest by agreeing to keep Sanders-Drazen as counsel even after she explained that she could not pursue what she perceived to be a weak ineffective-assistance claim against trial counsel, and because Hesser didn't develop an argument for the potential strength of his ineffective-assistance-of-trial-counsel claims. This wasn't an unreasonable application of federal law. *See Hesser*, 2023 WL 6992353, ¶ 26 (citing *State v. Demmerly*, 2006 WI App 181, 296 Wis. 2d 153, 722 N.W.2d 585 (which in turn cited *Strickland* and federal caselaw barring regarding ineffective-assistance claims after waiver of counsel's conflict of interest)).

Hesser also argues that his waiver wasn't actually knowing. But the court of appeals concluded that it was, recounting Sanders-Drazen's and Hesser's testimony at the *Machner* hearing showing that Hesser was aware of the consequences of his waiver. Hesser fails to show that the court of appeals either unreasonably determined the facts underlying that conclusion or unreasonably applied the law. So Hesser is not entitled to habeas relief on this claim.

**D. Certificate of appealability**

The remaining question is whether to grant Hesser a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because I find that no reasonable jurist would debate the outcome here, I will not issue Hesser a certificate of appealability. He may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1. Petitioner Geoffrey Daniel Hesser's motion for extension of time, Dkt. 25, is GRANTED.

2. Petitioner's amended petition for a writ of habeas corpus under 28 U.S.C. § 2254, Dkt. 14, is DENIED.

3. Petitioner is DENIED a certificate of appealability.

4. The clerk of court is directed to enter judgment and close the case.

Entered August 21, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge